UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 17-10308-FDS |
| | ) | |
| JOHN F. SOULE, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this Sentencing Memorandum in the above-captioned case currently scheduled for October 19, 2018. For the reasons outlined in this memorandum, the Government believes that a sentence of 46 months' imprisonment, the low-end of the advisory guideline range, is the appropriate sentence in this matter. Following the completion of this sentence, the Government requests that the defendant be on supervised release for a period of 36 months and be ordered to pay restitution in the amount of $58,551 to the banks listed in the Indictment and a mandatory special assessment of $300.00.

**I.   PROCEDURAL HISTORY**

On October 5, 2017, John F. Soule ("Soule") was named in a three-count Indictment charging him with bank robbery in violation of 18 U.S.C. § 2113(a).  On July 19, 2018, Soule pled guilty to this Indictment.

**II.  FACTS**

The facts, as stated in the Pre-Sentence Report ("PSR"), are largely uncontested.

Between July 12, 2017, and September 8, 2017, three banks in the Greater Boston area were robbed.  Based on the banks' video surveillance cameras' footage, the victim tellers' descriptions of the robber, and the manner and method of each of the robberies, the FBI opined that the same individual was involved.  In total, the banks listed in the Indictment, suffered losses of $58,551.00. During their investigation, the FBI's Violent Crimes Task Force collected information and suspected Soule as the potential robber.  On September 28, 2017, a criminal complaint was issued in this district charging Soule with these robberies.  On September 29, 2017, Soule was located and arrested.  At the time of his arrest, Soule possessed $8,205.00 in US currency.  Soule appeared before US District Court Magistrate M. Page Kelley and was ordered detained.  On October 5, 2018, a three-count Indictment was handed down charging Soule with bank robbery in violation of 18 U.S.C. § 2113(a).  Soule has been detained in the custody of the US Marshal since his initial arrest.

III. **GUIDELINE ANALYSIS**

A. **Offense Level Computation**

**¶ 44 Adjusted Offense Level - Count-One:**

The Government agrees with Probation's conclusions that Soule's Adjusted Offense Level for Count One of the Indictment is 22.

**¶ 50 Adjusted Offense Level - Count-Two:**

The Government agrees with Probation's conclusions that Soule's Adjusted Offense Level for Count Two of the Indictment is 22.

**¶ 57 Adjusted Offense Level - Count-Three:**

The Government agrees with Probation's conclusions that Soule's Adjusted Offense Level for Count Three of the Indictment is 23.

**¶ 61 Combined Adjusted Offense Level:**

The Government agrees with Probation's conclusions that a multiple count adjustment is appropriate in this matter and that the Combined Adjusted Offense Level is 26.

**¶ 65 Total Offense Level:**

The Government agrees with Probation's conclusions that, with acceptance of responsibility the total Offense Level is 23.

**¶ 76 Criminal History Computation:**

The Government agrees with Probation's conclusions that Soule's total criminal history score is one, which establishes a criminal history category of I.

**IV.   SENTENCING OPTIONS**

**¶ 127 Guideline Provisions:**

The Government agrees with Probation's conclusions that based on a Total Offense Level of 23, and a Criminal History Score of I, the guideline imprisonment range is 46-57 months.

## V. <u>SENTENCING RECOMMENDATION</u>

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence.  These factors include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

For the reasons detailed below, the Government believes that a sentence of 46 months' imprisonment, the low-end of the advisory guideline, is fair and just and takes into account the factors enumerated in 18 U.S.C. § 3553(a).

### A. Soule Engaged in a Series of Violent and Dangerous Crimes

The incidents in the instant case demonstrate a pattern of violent criminal conduct. In each individual robbery, Soule jumped over the tellers' counter and made demands for the bank's money—and in at least one robbery, Soule stated that he had a knife. In the aid to disposition evaluation, Soule stated that he pre-planned the subsequent robberies after he completed the first robbery. These were not impulsive decisions, rather, they were deliberate attempts to break the law. Soule said that he

4

used at least part of the stolen money to purchase drugs and
jewelry for his girlfriend, and that he also distributed some of
the money to friends.

The seriousness of these offenses warrants a significant
sentence. Bank robbery is one of the most serious federal
crimes. The robberies have an impact not only on the bank and
the tellers involved in the incidents, but also on the community
at large. The tellers at the banks Soule decided to rob likely
felt incredibly unsafe when Soule jumped over the counters and
started making demands. In at least one incident, Soule said he
had a knife, while in another incident, Soule demanded that the
bank tellers turn around and delay sounding the alarm,
presumably under threat of violence.

In addition to making the banks' employees feel unsafe,
Soule's crimes likely made the banks' customers feel unsafe.
Everyday citizens frequently visit their bank to make ordinary
transactions. When individuals like Soule commit violent crimes
such as bank robberies, citizens will likely feel an
understandable apprehension about visiting their bank due to the
threat of falling victim to a potential violent incident or
hostage situation. This apprehension can become even more
significant when an individual commits a series of bank
robberies within a given area in a short duration of time, as

Soule did here. Citizens should not have to feel threatened that their local bank is the robber's next target.

Soule intended to commit these serious crimes. After completing the first robbery, Soule said that he planned the subsequent robberies, and he used the money to purchase drugs and jewelry. In the later incidents, Soule brought a change of clothes to the bank so he could alter his appearance before leaving the area. Soule's deliberate decisions in the planning and execution of these robberies indicate that he was aware of the serious nature of the offenses but nevertheless decided to disregard the law and societal norms.

## B. Soule's Criminal History is Concerning

Soule has had cycles of trouble with the law. Early in his life, Soule had a series of criminal arrests and convictions that resulted in multiple prison sentences. These incidents covered a wide variety of offenses including possession of a controlled substance with the intent to distribute, as well as violent offenses such as robbery, assault and battery, and breaking and entering. Soule was released from prison at age 32 and managed to avoid a subsequent conviction from 1998–2015. However since 2015, Soule has unfortunately returned to criminal activity beginning with a larceny conviction and escalating to the multiple bank robberies at issue here.

In Soule's previous crime spree, the offenses occurred in close proximity to each other. As set forth in the PSR, Soule's previous adult convictions include:

1. **PSR ¶ 68 9/5/1982 (Age 17)**
   **Operation to Endanger**
   **Larceny of a Motor Vehicle**
   **Breaking & Entering**
   Guilty conviction, 16 day sentence

2. **PSR ¶ 69 10/23/1985 (Age 20)**
   **Possession of Burglarious Tools**
   Guilty conviction, 2-year sentence suspended and probation
   until 9/30/1987
   Probation violated 5/5/1987, 2 years committed

3. **PSR ¶ 70 7/1/1986 (Age 21)**
   **Robbery**
   **Malicious Destruction of Property**
   **Assault & Battery**
   Guilty conviction, 3-5 years committed
   Paroled 4/27/1990
   Returned to custody on parole revocation 9/20/1991
   Sentence completed 12/6/1991

4. **PSR ¶ 71 6/6/1987 (Age 22)**
   **Escape from Penal Institution**
   Guilty Conviction, 30 days committed from and after
   sentence being served

5. **PSR ¶ 72 7/22/1990 (Age 25)**
   **Breaking & Entering with Intent to Commit a Felony (3
   counts)**
   **Attempt to Commit Crime (Breaking & Entering)**
   **Larceny from a Building (2 counts)**
   **Malicious Destruction of Property**
   **Larceny More Than $250**
   **Malicious Destruction of Property (Motor Vehicle)**
   **Possession of Burglarious Tools (2 counts)**
   **Injure Depository of Valuables (5 counts)**
   **Falsify Motor Vehicle Document**
   Guilty, 90 days committed, concurrent with sentence serving

6. **PSR ¶ 73 2/7/1992 (Age 26) *Date of Arraignment**
   **Larceny More Than $250**

```
Guilty, 2 year sentence suspended until 7/19/1996
Violation of Probation
Probation Term ended 1/2/1998
```

7. **PSR ¶ 74 1/24/1993 (Age 27)**
   **Possession of PCP with Intent to Distribute**
   Guilty plea, 48 months committed
   Released from custody 12/31/1997
   Supervised Release Term 12/30/2000

8. **PSR ¶ 75 10/7/2015 (Age 50)**
   **Larceny Under $250**
   Guilty finding
   Probation until 6/2/2016

**C. The Recommended Sentence Meets Soule's Needs**

Soule's history of legal issues often coincides with the mental health and substance abuse challenges he has faced at various points in his life. He has had the opportunity to participate in treatment programs but he has not yet been able to take advantage of the programs in a way that will enable him to turn his life around. A significant sentence for these incidents will provide Soule with another opportunity to receive additional treatment to overcome his substance abuse challenges.

During the period from 1982–1993 when Soule initially faced legal problems, he experienced significant substance abuse challenges. He began drinking alcohol and using marijuana while he was a teenager, and "[e]xcessive alcohol consumption was prevalent through his teens and 20s." PSR ¶ 114. Also in his 20s, Soule started using crystal methamphetamine, cocaine, PCP, and heroin. Many of the criminal incidents that he was involved

in occurred while he was actively using these substances. It is clear that when Soule uses drugs and alcohol, he is more prone to engaging in criminal activity, and he must refrain from doing so if he wants to be a contributing member of society.

Unfortunately, Soule has recently resumed drinking alcohol and using substances like cocaine and heroin. By May 2017 and continuing until his recent arrest, Soule was drinking one quart of rum daily, smoking crack cocaine daily, and sniffing or injecting heroin daily. He also used Xanax regularly. This return to substance abuse, combined with recent criminal offenses, raises concern that Soule is returning to the pattern of illegal activity that plagued him in the 1980s-1990s.

Soule has had the opportunity to participate in treatment and educational programs, but he has not been able to fully take advantage of them. Soule participated in substance abuse treatment while he was incarcerated and on supervised release. He was able to maintain sobriety for some time, but after his supervised release ended, he resumed drinking alcohol and using drugs like cocaine and heroin. Soule knows that his drug use has tremendously impacted his life, but he has been unable to overcome these challenges. His history shows that when he uses drugs and alcohol, he also usually engages in criminal activity. Any sentence that Soule serves must include treatment programs to help him eliminate his substance use, not only to move his

life in the right direction, but also to protect the community
from any further criminal activity that Soule may engage in when
he is under the influence of drugs.

A significant sentence in this case is fair and just. Soule
had previously engaged a pattern of criminal offenses, and he
has unfortunately returned to that behavior. The recommended
sentence should allow Soule to receive the appropriate treatment
to alleviate his substance abuse and mental health challenges,
while also sending a message that bank robberies are serious
crimes with serious consequences.

## VI.   CONCLUSION

For the reasons stated herein, the Government requests this
Court impose a sentence of 46 months' imprisonment, the low end
of the guideline range.  Following the completion of this
sentence, the Government requests that Soule be on supervised
release for a period of 36 months, be ordered to pay restitution
to the banks listed in the Indictment in the amount of
$58,551.00, and a mandatory special assessment of $300.

This is a just and appropriate sentence as dictated by the
circumstances of this case and Soule's life-long criminal
history.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Kenneth G. Shine*
      KENNETH G. SHINE
      Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kenneth G. Shine*
KENNETH G. SHINE
Assistant U.S. Attorney