UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>JOHN SOULE, )<br>       Defendant )<br>) | DOCKET NO: 0101 1:17CR10308 |

## JOHN SOULE'S SENTENCING MEMORANDUM

John Soule respectfully submits this sentencing memorandum to aid the Court in sentencing. Mr. Soule pled guilty on July 19, 2018 to 3 counts of Bank Robbery in violation of 18 U.S.C. § 2113(a). Probation has calculated Mr. Soule's offense level as 23, with a criminal history category of I, resulting in a guideline range of 46 to 57 months. PSR ¶ 127.

### I.   BACKGROUND INFORMATION

On September 29, 2017, Mr. Soule was arrested for three bank robberies that occurred between July 12, 2017 and September 8, 2017. This arrest followed twenty years of successful living and functioning, which notably included staying out of jail. During those 20 years (1997-2017) Soule worked hard to manage his substance use disorder. Despite some relapses he functioned highly and maintained steady employment most recently as a mechanic on heavy diesel engines. He explains, "I'm all right if I'm working." His downward spiral, which cumulated in these robberies and charges, progressed rapidly in the summer of 2017. Despite working long hours at a well-paying job, he was struggling financially because the IRS was garnishing a significant portion of his income for back taxes and child support.[1] His driver's license was revoked because his brother Aaron Soule had obtained a driver's license using John's name and date of birth when his own was revoked and then was charged with drunk driving in South Carolina.[2] Around this time he began a relationship with a woman who was substance dependent. As Soule grew increasingly resentful of his situation he relapsed and reverted to serious criminal activity that had not been part of his life for decades. On July 12, 2017, Mr. Soule robbed the Eastern Bank

---

[1] See Exhibit 1: several of John Soule's paystubs from the summer of 2017 showing garnishment of wages; Exhibit 2 Child Support payments and arrears collected by MA DOR 2004-2017 with over $12K remaining at present.
[2] Exhibit 3: Michigan Driver's License under John Soule's name and DOB with Aaron Soule's photograph.

located in Cambridge, Massachusetts. During this robbery, Mr. Soule made verbal demands for the money, threatened that he had a knife and jumped over the teller counter.[3] A bank audit indicates that Soule stole $12,940 from Eastern Bank. On August 9, 2017, Mr. Soule robbed the Webster Bank located in Boston, Massachusetts. Soule made verbal demands for the money and jumped over the teller counter to retrieve the cash. A bank audit shows that Soule stole $3,137 from Webster Bank. On September 8, 2017, Soule robbed the Rockland Trust bank located in Quincy, Massachusetts. Soule made verbal demands for the money, jumped over the teller counter and entered into the bank vault. Rockland Trust alleges that Soule stole $42,747 their bank.[4] Soule believes that he procured approximately $15,000 from Rockland Trust.

Soule was arrested on September 29, 2017. Arresting officers claim to have recovered $8000 in cash from Soule's person which they attributed as proceeds from the robberies. Soule maintains that he had $13000 in cash on his person at the time of his arrest ($10000 in a fanny pack and $3000 in his backpack.) While in transport to the Court, Soule told agents that he was responsible for the three bank robberies. Mr. Soule also explained to the agents that he was struggling with his addiction to cocaine and pain killers. Upon the agents showing Soule stills from the banks' surveillance footage, Mr. Soule confirmed that each image depicted him, and he signed each photo confirming his identification.

## II.   SENTENCING RECOMMENDATION

Probation has calculated Soule's offense level as 23, with a criminal history category of I, resulting in a guideline range of 46 to 57 months. PSR ¶ 127. Soule agrees with this calculation.

Soule submits that the governments recommendation of a 46 month sentence, while at the lowest end of the applicable guidelines range, is nonetheless "greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a). The government has undervalued the significance of a person with Soule's personal history and criminal record remaining out of custody for twenty years. This was clearly on display in the Government's sentencing memorandum, p. 6, which reads "Soule was released from prison at age 32 and *managed to avoid a subsequent conviction* from 1998-2015.*"*[5](emphasis added)

---

[3] Cambridge Police Department interviewed Eastern Bank tellers and one teller reported that Mr. Soule was very polite and stated he was not going to hurt her and kept saying he was sorry. See, Cambridge Police Department Incident Report dated July 12, 2017.
[4] Mr. Soule disputes that he stole such a high amount from Rockland Trust and believes the actual amount to be significantly less. Unlike the other two affected banks which provided a detailed audit of the stolen funds, Rockland Trust submitted a summary receipt totaling $42,747.00 which does not adequately resolve this factual dispute. See Exhibit 4 – Rockland Trust receipts. In contrast, see Exhibit 5, the detailed audit provided by Eastern Bank.
[5] Mr. Soule was convicted of larceny under $250 (a misdemeanor) in 2015 and was placed on probation for one year which he completed successfully. It is significant that the sentencing judge felt that probation was an appropriate punishment given Soule's significant criminal record. This signifies that the relevant conduct was not deemed particularly serious or troubling. Mr. Soule completed probation successfully and was never brought before the court on an alleged violation.

Soule recommends a 36 month sentence to be followed by 3 years of supervised release. Soule submits that such a sentence is one that is "*minimally* sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

### III.    APPLICATION OF SECTION 3553(a) FACTORS

Mr. Soule's early upbringing was a recipe for addiction and maladaptive behavior. His mother was only 15 years old when she gave birth to him. His father left his mother after he was born and worked as a merchant seaman and would return home once or twice a year. Soule remembers his father drinking heavily when he would visit and his mother kicking him out of their home. Soule grew up in the Old Colony housing developments of South Boston. He was subject to mandatory busing during the court-ordered desegregation of the Boston Public Schools. This period of violence and unrest centered in South Boston. At nine years old Soule personally witnessed a black man beaten to death by a group of white men in front of his school and still has tangible emotional scars from that memory.

Soule had significant behavioral problems growing up. Soule was removed from the family's home at the age of 12 and was placed in a locked facility for boys for six months. Soule believes that this was the result of truancy. At age 14 he was placed into Department of Youth Services custody for 18 months for stealing a car. Soule was in custody at age 17 when his mother passed away. Soule told the probation officer completing his pre-sentencing interview that she died of serious health issues. He told Dr. Stein[6] that she died of an accidental overdose but also suffered from serious health issues. His maternal aunt, Andrea Georges, says that her sister (Soule's mother) took her own life and that Soule knows but can't cope with this knowledge and the pain it brings him. Ms. Georges says that when Soule wasn't in state custody he was mostly living on the street. She would go looking for him to bring him home because his mother could be bothered.

Soule says that Ms. Georges is "like a mother" to him. Ms. Georges feels the same affection for her nephew. She told me that "his whole life has been a rejection;" his father left and his mother seemed to have resented him for it. Georges remembers her sister scolding "Jackie" (her name for John) when he was a toddler for asking "where is daddy." She recalls John as a child getting angry when she told him that she loved him. She remembers that even from a very young age she could see that "something wasn't right" with John. If he was sent out to play when he didn't want to he would bang his head against the side of a house or building. Georges says that Soule is drawn to people who hurt him which includes his father who did drugs with his children. She describes John as "full of love but doesn't know how to fit in." She says that even with all his

---

[6] Dr. Stein completed an "Aid in Disposition Evaluation" which is attached as Exhibit 6 – FILED UNDER SEAL.

issues "Jackie was the guy who would drive across the country if I was in trouble." She believes that "Jackie can be redeemed but needs a lot of help."

Mr. Soule is now 53 years old. In his Aid to Disposition evaluation,[7] psychologist Jeffrey Stein explains that Soule shows "maladaptive functioning associated with problematic personality traits including impulsivity and risk-taking associated with antisocial behavior."[8] Stein attributes these maladaptive to his difficult upbringing. His behavioral problems, inadequate familial support, and struggles in school resulted in frequent placement in group homes and Department of Youth Services facilities. By the age of 14 Soule began drinking and using marijuana. As his reliance on substances increased, so did the frequency and severity of legal troubles. While Soule's support network was insufficient growing up, his mother's tragic death when he was 17 and in custody left him feeling that he was on his own. By his 20's Soule was treating apparent mental health issues with crystal meth, cocaine, PCP and heroin.[9] Soule was sober from 1995 to 2000 while in federal custody and on supervised release. After his supervised release ended he gradually resumed alcohol and drug misuse which was exacerbated in 2006 when he was prescribed oxycodone for a broken clavicle. Despite his resumption of drug and alcohol misuse he managed to function highly by maintaining employment. He has no entries on his CORI from the time of his release in 1997 and his misdemeanor larceny conviction in 2015.

Despite his mental health and addiction problems, Mr. Soule has many achievements that did not come easily to him given his personal circumstances. In 1982, Mr. Soule obtained his GED and began working as a mechanic. Mr. Soule found his passion in this line of work and for most of his adult life was able to maintain employment. In 2017, around the time of these offenses, Mr. Soule was employed by Troupe Waste Services in Abington, Massachusetts as a diesel mechanic. Between 2015 and 2017, Mr. Soule actively participated in outpatient mental health and substance abuse treatment through the Boston Medical Center which included Medically Assisted Treatment and individual therapy.[10]

Upon reviewing Soule's criminal history, the correlation between his convictions and addiction is apparent. Soule went almost twenty years without a criminal conviction.  Given this information and based on his evaluation of Soule, Stein stated that "it is my clinical opinion that mental health issues contributed to Soule's impulsive acts in robbing three banks."[11] Stein offered insight into the notable decline in Soule's mental state leading up to the summer of 2017 noting that Soule began dating a woman who was dependent on illegal substances.[12] Around the time of the offenses, Soule admitted that he was using drugs again and drinking every day. "The

---

[7] Exhibit 6 – filed under seal.
[8] Stein, p. 7.
[9] PSR ¶ 114.
[10] Stein, p. 3; 7-8. Treatment records received and reviewed by defense counsel and Dr. Stein.
[11] Stein, p. 7
[12] Stein, p. 7.

defendant was drinking one quart of rum daily, smoking crack cocaine daily, and sniffing or injecting heroin daily."[13] In July 2017, at the onset of the robberies, Soule's mental health clinician observed that Mr. Soule began exhibiting "impaired judgment, somewhat manic motor activity, and anxiety."[14]

Soule has accepted responsibility for his actions and recognizes that when he allows his addiction to overcome him he then loses all control. He told Probation Officer Tricia Marcy that drugs and alcohol have impacted his decision making, led to legal difficulties, and caused him to "lose everything."[15] However, when Soule is receiving the proper treatment for his mental health issues and substance use disorder, he has exhibited what he can and wants to be: a productive member of society.

Soule has expressed interest in the RDAP program as an important step in addressing his dependency. He knows that he does not qualify for any sentencing reduction by completing the program but requests a judicial recommendation for the program nonetheless. It is noted in his PSR that "it appears that the defendant is an appropriate candidate for RDAP based on his reported history of substance abuse prior to arrest. The defendant has expressed an interest in participating in the program."[16] Dr. Stein also recommends that Soule "utilize mental health services while incarcerated and be prepared upon release to participate in treatment aimed at mollifying the negative motions he has experienced over the course of his life which make him especially vulnerable to the effects of substance use."[17] He further recommends that "[p]rior to his release, Mr. Soule will need access to mental health treatment and established post-release professional services so that he can immediately receive treatment in the community at that time."[18]

## IV.     CONCLUSION

For all the reasons stated above, Mr. Soule requests that the Court impose sentence of 36 months followed by 3 years of supervised release.

---

[13] PSR ¶ 116.
[14] Stein, p. 7 and PSR ¶ 108.
[15] PSR ¶ 118.
[16] PSR ¶ 118.
[17] Stein, p. 8.
[18] Stein, p. 8.

                                          Respectfully submitted,
                                          Attorney for JOHN SOULE,

                                          ___/s/Keren Goldenberg_____
                                          Keren Goldenberg
                                          BBO #657629
                                          19A Alexander Ave.
                                          Belmont, MA  02478
                                          (617) 431-2701
                                          keren@kgdefenselaw.com

Date: October 13, 2018